428 So.2d 420 (1983)
STATE of Louisiana
v.
Tyronne LINDSEY.
No. 82-KA-1323.
Supreme Court of Louisiana.
February 23, 1983.
Rehearing Denied March 25, 1983.
*421 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Steve Little, Philip Boudousque, Melvin Zeno, & William C. Credo, Asst. Dist. Attys., for plaintiff-appellee.
Martha A. Sassone, Gretna, Joseph L. Montgomery, Metairie, Indigent Defender Bd., for defendant-appellant.
MARCUS, Justice.
Tyronne Lindsey was indicted by the grand jury for the first degree murder of Earline B. Kidner in violation of La.R.S. 14:30. After trial by jury, defendant was found guilty as charged. A sentencing hearing was conducted before the same jury that determined the issue of guilt. The jury unanimously recommended that a sentence of death be imposed on defendant. The trial judge sentenced defendant to death in accordance with the recommendation of the jury. Defendant appealed his conviction and sentence to this court. We affirmed defendant's conviction but vacated his sentence because of inappropriate comments by the state and the trial judge on the possibility of pardon and commutation. Defendant's case was remanded to the district court, 404 So.2d 466, for the empanelling of a new jury for determining anew only the issue of penalty in accordance with the procedure set out in La.Code Crim.P. art. 905.1(B).
On remand, a new jury was selected. The evidence presented was practically the same as that adduced at the original trial of the case. Additionally, defendant offered extensive evidence in mitigation. At the conclusion of the sentencing hearing, the jury unanimously recommended that a sentence of death be imposed on defendant. The trial judge sentenced defendant to death in accordance with that recommendation. In an assignment of errors filed in the district court, defendant designated seventeen errors to be urged on appeal. In brief to this court, defendant asserts eleven separate arguments covering many but not all of the assigned errors. Those errors not briefed were likewise not argued. In disposing of the matter, we followed the numerical order of the assignments of error designating opposite each the numbered argument(s) covering those assigned errors. *422 Sixteen of the assignments of error including eight of the arguments do not present reversible error, nor do any involve legal issues not governed by clearly established principles of law. They will be treated in an appendix which will not be published but which will comprise part of the record in this case. We have treated those assignments which were neither briefed nor argued at the end of the appendix.
The remaining assignment of error (No. 17) covered by arguments (Nos. V, VII and IX) deals with the sentence review by this court.

FACTS
On the evening of December 19, 1979, at about 7:30, John Knopf and Steven Birks were returning to their car in the parking lot of the Oakwood Shopping Center in Jefferson Parish. They heard someone scream behind them and began walking toward the direction from which the scream had come. Knopf hollered "Hey," and Birks, turning and looking toward his left, saw "a black man who had a white lady crouched down by the side of her car, passenger side." No other black men were in the vicinity. The man started running. Birks and Knopf, running down separate aisles of cars, pursued him. After about fifty yards, the man stopped in the well-lit area, turned, and aimed a .22 revolver at Knopf. Surprised to discover the man was armed, Knopf hesitated and then ducked behind a car. The man took off again and Birks continued the chase but never had an opportunity to observe his face and ultimately lost him.
Richard Alexander, a bystander in the vicinity, was about to get into his car when he heard screams and, looking in the direction from which they came, observed a struggle and then somebody running and pointing a gun at two people chasing him. When the man came within two car lengths (fifty feet), Alexander saw the man turn and point the gun at him. He noted both the man's face and that the gun was a .22 revolver.
Birks and Knopf returned to the area where they first observed the man only to find that his victim, Earline B. Kidner, age fifty-five, had been shot point blank. Mrs. Kidner was in town temporarily, visiting her son for three months around the Christmas holidays. She died in the hospital the day after the shooting.
Both Alexander and Knopf later identified defendant, from photographic lineups, as the man they had seen that night. Upon his arrest, defendant gave a taped statement to the police, admitting both his complicity in a scheme to rob Mrs. Kidner of her purse and his flight from the area. But, defendant claimed that one of three friends with him, someone named "Sidney," shot Earline Kidner. Officer Beckendorf, who took the statement from defendant, testified that Joseph Smith, another of the friends defendant claimed was with him the night of the shooting, had accused defendant of the killing.

SENTENCE REVIEW

ASSIGNMENT OF ERROR NO. 17 (ARGUMENTS V, VII AND IX)
Defendant contends the trial judge erred in imposing an excessive sentence.
Article 1, section 20 of the Louisiana Constitution prohibits cruel, excessive, or unusual punishment. La.Code Crim.P. art. 905.9 provides that this court shall review every sentence of death to determine if it is excessive. The criteria for review are established in La.Sup.Ct.R. 28, § 1, which provides:
Review Guidelines. Every sentence of death shall be reviewed by this court to determine if it is excessive. In determining whether the sentence is excessive the court shall determine:
(a) whether the sentence was imposed under the influence of passion, prejudice or any other arbitrary factors, and
(b) whether the evidence supports the jury's finding of a statutory aggravating circumstance, and
(c) whether the sentence is disproportionate to the penalty imposed in similar *423 cases, considering both the crime and the defendant.

(a) Passion, prejudice or any other arbitrary factors
The defendant contends the death sentence was imposed under the influence of passion, prejudice or other arbitrary factors attributable to improper and inflammatory remarks made during the prosecutor's closing argument at the sentencing hearing. Defendant argues that the prosecutor's remarks greatly exceeded the evidence and "created a substantial risk that the jury's attention would be improperly shifted from its proper focusthe appropriate sentence to impose after an evaluation of the aggravating and mitigating factorsto the subject of the crime in general."
During closing argument, the prosecutor stated:
If a man in this society can go to a shopping center during any point of time, Christmas or whatever, and because he needs narcotics or because he doesn't care about the human effect, he doesn't care about people, can take a gun and stick it into a woman's back and shoot her and murder her, simply because of his own gratification, if a man can do this and not receive the ultimate penalty in law, well... that decision is in your hands.
The prosecutor had made almost identical comments during closing argument at defendant's original sentencing hearing. State v. Lindsey, 404 So.2d 466, 482 (La. 1981). And, like the original hearing, defendant made no objection at the time but rather waited and raised it as an assignment of error on appeal.[1]
Again, as on original hearing, we find defendant's contention to be without merit. The prosecutor's closing argument consisted of ten pages and four pages in rebuttal. He reminded the jury that defendant had already been found guilty of first degree murder. However, he emphasized that the state was nonetheless required to "prove beyond a reasonable doubt that at least one aggravating circumstance exists." He informed the jury that his "closing remarks are not evidence. It's merely what the attorneys appreciate the evidence to be in the matter." He then proceeded to review the evidence to show that defendant had committed a murder while engaged in the perpetration of an armed robbery, had knowingly created a risk of great bodily harm to more than one person and had a significant prior history of criminal activity. In rebuttal, the prosecutor responded to the arguments advanced by defense counsel in his closing argument. Again, he reminded the jury that its decision should not be "predicated on the argument of counsel" but rather "based on nothing more than the facts, the evidence, the circumstances that you heard during the course of this trial." It was in this context that the prosecutor made the above remarks. Considering the prosecutor's closing argument as a whole, we are unable to say that the remarks in question influenced, prejudiced or diverted the jurors from their sentencing obligations as correctly set forth in the trial judge's charge to them after completion of closing argument. Clearly, the remarks did not contribute to the jury's recommendation that defendant be sentenced to death.
Our review of the record reveals no evidence that passion, prejudice or any other arbitrary factors influenced the jury in its recommendation of the death sentence. Nor has any argument to that effect been raised by defendant other than the above which we have found to be without merit.[2]

*424 (b) Statutory aggravating circumstances

The jury in its verdict found the following statutory aggravating circumstances:
(a) the offender was engaged in the perpetration of armed robbery or simple robbery.
(b) the offender has a significant prior history of criminal activity.
(c) the offender knowingly created a risk of death or great bodily harm to more than one person.
Armed robbery is the theft of anything of value from the person of another or which is in the immediate control of another by use of force or intimidation, while armed with a dangerous weapon. La. R.S. 14:64. In our view, the evidence amply supports the jury's finding that defendant was engaged in the perpetration of an armed robbery.
Since the jury found one statutory aggravating circumstance (La.Code Crim.P. art. 905.4(a)) and that circumstance is clearly supported by the record, we find it unnecessary to decide whether the jury erred in finding two additional aggravating circumstances. Even if the jury erred the error is harmless. State v. Narcisse, 426 So.2d 118 (La., 1983); State v. Moore, 414 So.2d 340 (La.1982); State v. Mattheson, 407 So.2d 1150 (La.1981), rehearing denied; State v. Monroe, 397 So.2d 1258 (La.1981); State v. Williams, 383 So.2d 369 (La.1980), cert. denied, 449 U.S. 1103, 101 S.Ct. 899, 66 L.Ed.2d 828; State v. Martin, 376 So.2d 300 (La.1979), cert. denied, 449 U.S. 998, 101 S.Ct. 540, 66 L.Ed.2d 297.[3]

(c) Proportionality to the penalty imposed in similar cases
Supreme Court Rule 28, § 4 provides that the district attorney shall file with this court a list of each first degree murder case in the district in which sentence was imposed after January 1, 1976. The list shall include the docket number, caption, crime convicted, sentence actually imposed and a synopsis of the facts in the record concerning the crime and the defendant.
In the instant case, the list reveals that there have been twenty-one first degree murder prosecutions in the Twenty-Fourth Judicial District Court in and for the Parish of Jefferson since January 1, 1976. Of these prosecutions, fifteen, including the instant case, resulted in verdicts of first degree murder.[4] Out of these fifteen, the death penalty was recommended by the jury in five cases, including the present case.[5] In all five of these cases the defendants were the actual killers. In this case and two others, the killings occurred during armed robberies, a statutory aggravating circumstance.[6] In the fourth and fifth *425 death cases, there was either a risk of death or great bodily harm to more than one person or multiple aggravating circumstances.[7]
In the ten remaining first degree murder verdicts in Jefferson Parish, where a death sentence was not imposed, there was only one aggravating circumstance or a complete absence of such circumstances, or there were present mitigating circumstances which justified the jury's recommendation of life imprisonment.[8]
In an effort to counteract the aggravating circumstances argued by the state in the present case, defendant argued that there were three circumstances mitigating against a sentence of death:
(1) his youth (twenty years at the time of the offense). La.Code Crim.P. art. 905.5(f);
(2) that he was a principal whose participation was relatively minor. La.Code Crim.P. art. 905.5(g);
(3) that at the time of the crime, he was unable to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law because of mental disease or defect. La.Code Crim.P. art. 905.5(e).
Defendant called two psychiatrists, Dr. DeVillier and Dr. Arneson, as witnesses on the issue of mental defect. Both testified that defendant had an IQ between 50 and 60, representing mild to moderate mental retardation, but that he could distinguish right from wrong. Dr. Arneson found that defendant had a long history of antisocial behavior beginning around age eight when he struck another child with a railroad iron knocking his teeth out, as well as a history of drug abuse, and he described defendant as the type of person who would do anything for self-motivation or self-gratification regardless of the effect on others. Dr. Arneson further testified that defendant showed no remorse or display of sympathy in the present case and he considered defendant's chances of getting into this same kind of difficulty almost inevitable. Defendant also called as witnesses his minister, Reverend John L. Davis and two Catholic priests, Fathers George Lundy and Edward Arroyo, who had counseled him recently; but their testimony added little. No evidence was offered relative to the fact that defendant was a principal whose participation was relatively minor. To the contrary, the evidence is clear that defendant was the only person who committed the murder while engaged in the perpetration of the armed robbery. Defendant's youth, age twenty at the time of the offense, was a mitigating circumstance before the jury for its consideration.
*426 Proportionality is a safeguard against arbitrary and capricious action by a jury. This court recently affirmed a sentence of death imposed for another armed robbery conviction in Jefferson Parish. State v. Taylor, supra. Although the present case does not involve the elements of heinousness present in Taylor, defendant did aim the murder weapon at several eyewitnesses and had a prior criminal record.[9] We do not consider that defendant has demonstrated mitigating factors making the penalty imposed in this case arbitrary or capricious or disproportionate to that imposed in similar cases.
According to the Uniform Capital Sentence Report, defendant was a twenty year old black male at the time of the offense. He left school in his early teens and has worked only intermittently as a dishwasher and picking wood for his father. He has been evaluated as mildly to moderately retarded and has a long history of drug abuse. He has one child, illegitimate, to whom he has contributed some support. Defendant was arrested some two weeks after Earline B. Kidner's murder for carrying an illegal sawed-off shotgun. Three other subjects were arrested at the same time. One, Lester Thomas, gave a signed statement that defendant fled the scene of the shooting. Another, Michael Vincent, stated defendant spoke with him immediately after the shooting and admitted committing the murder. Defendant has a juvenile record and an adult record consisting of two prior misdemeanor convictions and one felony conviction.
After considering both the crime and the defendant, we are unable to conclude that the sentence of death in the instant case is disproportionate to the penalty imposed in similar cases in Jefferson Parish.
In sum, based on the above criteria, we do not consider that defendant's sentence of death constitutes cruel, excessive or unusual punishment.

DECREE
For the reasons assigned, defendant's sentence is affirmed.
DENNIS, J., concurs with reasons.
LEMMON, J., concurs and will assign reasons.
DIXON, C.J., dissents with reasons.
DENNIS, Justice, concurring.
I respectfully concur.
The majority opinion states that any error committed by the jury in finding more than one aggravating circumstance is harmless. The statement is misleading because it indicates that this court has reviewed the record and found no reasonable possibility that such an error contributed to the verdict and was harmless beyond a reasonable doubt. See State v. Gibson, 391 So.2d 421 (La.1980). There has been no review for this purpose, however, because this court has taken the position that its judicial function is completed upon the finding of sufficient evidence to support one aggravating circumstance in a capital case. See, State v. Monroe, 397 So.2d 1258 (La.1981); Cf. State v. Moore, 414 So.2d 340 (La.1982); State v. Williams, 383 So.2d 369 (La.1980); cert. denied, 449 U.S. 1103, 101 S.Ct. 899, 66 L.Ed.2d 828; State v. Martin, 376 So.2d 300 (La.1979), cert. denied, 449 U.S. 998, 101 S.Ct. 540, 66 L.Ed.2d 297. See generally, Note, Capital Sentencing Review Under Supreme Court Rule 28, 42 La.L.Rev. 1100, 1110-112 (1982).

* * *
DIXON, Chief Justice (dissenting).
I respectfully dissent.
A constitutional death penalty is not available for twenty year old black retarded unemployable drug abusers like this defendant.
NOTES
[1] Ordinarily, this court would find that the issue had not been preserved for review. La. Code Crim.P. art. 841. However, because this is a capital case and because this court has an obligation to examine the record for passion, prejudice or arbitrary factors which may have contributed to the death penalty recommendation, we will review the prosecutor's argument for possible reversible error. See La.Sup.Ct.R. 28, § 1; State v. Berry, 391 So.2d 406 (La.1980) (on original hearing); State v. Sonnier, 379 So.2d 1336 (La.1980) (on rehearing).
[2] Although the defendant is black and the victim white, defendant does not contend nor does the record indicate that the prosecutor made any appeal to racial prejudice in order to influence the jury in making its recommendation of the death sentence.
[3] Zant v. Stephens, 456 U.S. 410, 102 S.Ct. 1856, 72 L.Ed.2d 222 (1982), does not represent a contrary holding. In Zant, the United States Supreme Court certified this issue to the Georgia Supreme Court for an explanation of the state-law premises supporting the court's conclusion that a death sentence was not impaired by the invalidity of one of the statutory aggravating circumstances found by the jury.
[4] State v. Shilling, No. 82-KA-1820 (docketed but not yet set for argument); State v. Taylor, 422 So.2d 109 (La.1982); State v. Sawyer, 422 So.2d 95 (La.1982); State v. Sharp, 418 So.2d 1344 (La.1982); State v. Lane, 414 So.2d 1223 (La.1982) (a companion to Sawyer); State v. Tuckson, 414 So.2d 360 (La.1982); State v. Love, 410 So.2d 1045 (La.1982); State v. Goza, 408 So.2d 1349 (La.1982); State v. Wilson and Moses, 404 So.2d 968 (La.1981); State v. Smith, 400 So.2d 587 (La.1981); State v. Berry, 391 So.2d 406 (La.1980); State v. Riggins, 388 So.2d 1164 (La.1980); State v. Manieri, 378 So.2d 931 (La.1979); State v. Andrews, 369 So.2d 1049 (La.1979).
[5] The other four cases were Sawyer, supra; Smith, supra; Berry, supra; and Taylor, supra. Taylor and Smith were black on white crimes. Berry and Sawyer were white on white crimes.
[6] The two cases involving armed robberies, in addition to the instant case, were Berry and Taylor, supra. In Berry, a police officer was killed during the course of an armed robbery. In Taylor, the defendant committed armed robbery in a shopping center parking lot at night. The victim had placed a car there with a For Sale sign. Defendant telephoned and expressed interest in the car. The victim was stabbed and shoved into the trunk of the car he had driven to the shopping mall.
[7] The two other death cases were Sawyer and Smith, supra. In Sawyer, there were multiple aggravating circumstances. In Smith, there was a risk of death or great bodily harm to more than one person. The conviction was affirmed in Smith but the case was remanded to the trial judge for development of additional facts relating to the existence of the aggravating circumstance found by the jury.
[8] State v. Lane, supra (Defendant was not the actual killer.); State v. Sharp, supra (Intoxicated Vietnam veteran killed wife's relatives when they tried to force him to leave their house in which his wife was staying since she decided to seek divorce.); State v. Goza, supra (Defendant was not the actual killer. The conviction and sentence were reversed and the case remanded for further proceedings.); State v. Andrews, supra (Defendant and victim were teenagers who had been arguing over football game.); State v. Manieri, supra (Defendants, two brothers ages 17 and 21, went to an acquaintance's house looking for marijuana; they killed eleven-year-old son of woman who asked them to leave her house.); State v. Love, supra (No aggravating circumstances established. The conviction and sentence were reversed and the case remanded for retrial.); State v. Tuckson, supra (On review, this court set aside the conviction and remanded the case for entry of guilty of second degree murder. Entry of unoccupied vehicle was not aggravated burglary.); State v. Wilson and Moses, supra (Defendants, both black, got into confrontation with a group of eighteen white males who were drinking beer in shopping center parking lot; defendants fired several shots, fatally wounding one person. The convictions and sentences were reversed and the case was remanded for a new trial.); State v. Riggins, supra (Defendant shot an elderly man who was in the process of closing up his business.); State v. Shilling, supra (Defendant and co-defendant stabbed and beat victim, took $30 from his pants pocket, and later slit his throat and drowned him.).
[9] As stated earlier our decision makes it unnecessary for us to decide whether the jury erroneously concluded that these factors constituted statutory aggravating circumstances. They were in any event appropriate factors for the jury to consider.